Your Honor, my name, your honors, excuse me, my name is Doug Cloud and I represent Mr. Jonassen. I apologize to you for not bringing my sport coat today. No disrespect intended. And I would appreciate it if you would excuse that oversight. Well, the fact that you know that you don't have it on, that's a good sign. That helps. We all have rough mornings. Yeah, I had everything else covered, I thought. So we're in a unique situation in this argument because the sole reason the district court judge threw this case out was conceded as an error by the Port of Seattle. And so therefore, the real argument is over the collateral issues that have been raised by Port of Seattle. And so I'm going to reserve about four or five minutes. Well, why don't you jump right to the exhaustion then? I mean, how do you reconcile your argument that Jonassen was not required to exhaust the grievance procedure provided for under the collective bargaining agreement with the Washington Court of Appeals decision  I mean, doesn't Woodbury establish that RCW 42.41.010, which you rely on, does not grant a cause of action in superior court? Yes, this case would be curtains for us if it is applied in this certain stances. And if the comparison between a Port of Seattle and the Seattle Municipal Code is comparable, I believe that there are some issues that demand further investigation. And, of course, I objected to the citation of Woodbury because I felt it was untimely under Rule 26J. And I also note that in reading the Woodbury case, the Seattle Municipal Code – I don't quite under – I mean, I guess I pick up on if you're saying it would be curtains, so you're conceding the relevance, but so why shouldn't we apply it? Is there any – it doesn't appear that he did exhaust here. Well, I guess it's because of the history of the case. We'd been up here once before and then back down. The court allowed an immediate second summary judgment motion and granted it on an erroneous basis. And Woodbury is an intermediate court – appellate court decision. And my understanding is the federal courts have to take that into account but must determine what the Washington State Supreme Court would do in order to consider that particularly binding. Now, I could be wrong on that, but that points again to the – Okay, so but what authority do you have that the Supreme Court would do otherwise? Well, I think there's a conflict to some extent in the way the Supreme Court has dealt with private employer causes of action and now how they're going with the local whistleblower protection act. Do you have another case that says you don't have to exhaust? There is a case I did bring that I think has some relevance that I will, if you don't mind, address in rebuttals because I can pull it while he's arguing and I will pull that. Hold it. Can I just say on this point of exhaustion, I understand your argument to be that in the district court, this was not fully briefed. Right. It was mentioned in a footnote. Is that what you're getting at when you talk about the history? It was mentioned in a footnote. I think he's trying to claim that – well, the thing I'm objecting to in that regard is the court struck the declaration of Jonathan on the grounds that it wasn't signed and I said in response to their motion to strike that, look, he had previously ordered that we had to make the motions in the body of our briefs, not in footnotes, and he ignored that ruling and just went with it. But my question, though, was this issue of exhaustion was not briefed in the district court. Not much. I mean, we almost – Don't tell me not much. I don't remember dealing with it, no. You were there. You've been dealing with this case for a long time. Oh, yes. Was exhaustion briefed in the district court? You can either answer that yes. It was. As one of my colleagues likes to say. I think it was. You can answer that yes or no. I think you could say it was. I think. Well, it's arguable because Wilson – Arguable. Wilson, the Wilson case – But you really don't want to say it was briefed. Well, I think that you could say it was. I don't necessarily think – But why do you – why can you say that, yeah, arguably it was briefed? Well, Wilson is a case that is addressed in Woodbury. I raised Wilson, okay? But we did not specifically brief the issue of the common law remedies being applied or not being applied to non-termination reductions in status at the job. And this is what we have been doing until now. And the district court didn't reach this issue. What's that? The district court did not address this issue. Not in its order. If the question is purely one of law, what would be gained by remanding to the district judge to consider it in the first instance? Well, I have to rely on the untimeliness. I mean, we've been here – this should have been raised four years ago. And to give the Port of Seattle another opportunity to plead in an affirmative defense, I think would be very untimely and prejudicial to us because this should have been pled in the first summary judgment four years ago. Well, it wasn't raised in their answer. But we have case law that says you can raise affirmative defenses at a summary judgment stage if it's thoroughly raised, properly raised, and the other side has a full chance to brief it. We didn't have any chance to brief it. Well, I just asked you whether or not you briefed it in the district court. And you said, well, arguably. Well, I was trying to be fair to them, but I would say no, we didn't address it. Now you're saying no. Well, it depends on how you read Wilson. And I'm trying to be as fair as possible. Wilson does talk about the local whistleblower protection act, but it only talks about it in terms of termination, not in terms of lower standards. So to the extent that you feel that that is addressed, I would say it's mentioned, it's not addressed. All right. All right. There was one other. Can we just jump over a bunch? Yes, please. Okay. So the elements of your cause of action, one is establishing a policy that is recognized and then establishing reliance. Right. Okay. Now, my recollection is he filed one affidavit that was signed, and then on the second motion for summary judgment, he submitted an affidavit, but it was unsigned. Right. And it wasn't until, like, two months later that you tried to submit. The precipice, right. Yes, with his signature, and the district court says no. The district court didn't address it. Well, he didn't let it be filed. Well, that. But he struck it. Right. Okay. So where, tell me how, maybe you can meet the first part of the cause of action, the first that there's a policy that's enforceable. How do you meet the second part of reliance without an affidavit from him? Well, we did it independently, and we cited to it in our responsive brief. There's a whole section where we cited to deposition testimony, where it was established by independent evidence other than the declaration. And so I guess I would say the declaration really was, the court really did, in my opinion, utilize the declaration. He just said he didn't, because otherwise his inferences that he drew, either that or he relied on our independent evidence, because he did speak of those issues in his order, and he rejected them, as they had been rejected in the previous appellate hearing. So, again, to us, we haven't had any opportunity. What was the evidence that showed that he relied on the policy? Well, I cited in response. Reliance is defined by the Washington courts. Okay. Well, I did cite to testimony in the response, and I would have to rely on that. It is in our responsive brief to their brief in a specific section, and I do have the declaration or the deposition testimony footnoted. But I should, if I have a few seconds left, I didn't answer his question, which I think is very pertinent. If the court feels that a court, whether it's this court or a lower court, has the right to consider that, and if you feel that it's binding, and I do believe that there's issues that we could explore and perhaps show that it isn't binding. For instance, the Seattle Municipal Code requires the administrative proceeding. The Port of Seattle doesn't even mention it. So there are issues that could distinguish it. But aren't they all legal issues? It appears to be a tough hurdle for us. But, again, we haven't had a chance to brief it, and that's the problem. I can't say that for sure without a full chance to brief, because this is an area of law that, frankly, I think Woodbury is wrong. And so, therefore, I think that we should have an opportunity to brief it. Let's hear from the Court. I'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Shane Kramer on behalf of the Port of Seattle. This Court should affirm for three reasons. First, it's barred by the statute of limitations. Second, as Your Honor noted, there's no evidence of justifiable reliance here. There's also no evidence that the Port breached any of the promises that Mr. Jonathan alleges are contained in the policies. And third, as Your Honors noted, he was required to exhaust his claims under the CBA with respect to these handbook policies. The law is clear on that. He not only didn't exhaust, he actually settled all claims arising out of the reassignment, which is the only alleged retaliatory act that's still at issue in the case after the last appeal. With respect to the statute of limitations issue, it's clear that the statute of limitations on his claim is three years under RCW 4.16.080, subsection 3 in the de Phillips v. Zolt case. It's also clear that the undisputed evidence is that his reassignment was final on December 28th, 2007. I thought it was final in January, January the 7th. No, Your Honor. Mr. Jonathan concedes that it was final when he received the letter finally reassigning him. He received that letter on December 7th. But I thought there was another, they had a meet and confer or something and they settled everything. They settled, so the courts representative who participated confirms it was the 28th. So does Mr. Jonathan's union lawyer. There was a second disciplinary action. Wasn't that all tied together? I thought the letter said that they were going to resolve everything. That was part of a grievance process that doesn't extend the statute of limitations. The evidence is clear that as of December 28th, 2007, he was reassigned to the boiler room. The statute of limitations is three years on that claim. He didn't file his complaint until January 7th, 2011, which is more than three years later. Hold on one second. So the January, you're telling me the January 7th letter doesn't deal with any of this? The January 7th letter is a letter sent to Mr. Jonathan memorializing the earlier terms. But Mr. Jonathan. But it says in that letter, it says everything is final. And it is, and it had been for. Well, but the letter, this is the letter confirms all that. Why doesn't the statute start running as of this date? Because his reassignment was final as the 28th. That's the date his claim accrued. When he received that December 28th letter, he could have gone to court the next, or he couldn't have gone to court, assuming that there's no preemption. He could have gone to court the next day and said, I was reassigned, it was improper, and his cause of action would have been proper. That's the date that the claim accrued. The cases we cited, the Supreme Court cases we cited, I think one of them is called Cheron. So the proposal was to combine, this is the settlement business. The proposal was to combine the disciplinary actions for both the event of October 25th, subject of discussion in the Loudermill hearings of November 29th and December 7th, and the event of November 9th, 07th. Does that pick up? It does not. No, it doesn't. None of those incidents? No, because the statute of limitations, his reassignment was final. Everyone concedes that. Now, as part of the grievance process, maybe he could have come up with a settlement of that, but the harm that he allegedly suffered was final as of December 28th. And with respect to the January 7th letter, all it did was send him a confirming letter regarding the terms that had been reached on January 4th, and that's SCR, I think, 244. So at the latest, even if you want to wrap in the settlement of the second disciplinary action, it became final no later than January 4th. I also wanted to address the issue on the justifiable reliance piece. Your Honor is absolutely correct. There's no evidence in the record that he relied on these policy sections. The reference in his reply brief to the evidence that he thinks would support that is the declaration that he didn't sign. And Judge Jones was absolutely correct in not considering the later precipice to the extent that he considered it. They're not even the same document. The signature page that Mr. Cloud purported to send in two or three weeks later isn't even from Mr. Jonathan's declaration. They have different page numbers. They have different footers documenting that they're from different documents. They're formatted differently. It's just a signature on a piece of paper. It doesn't avert anything. Now he's saying that there's quotes from depositions or something. There's evidence from depositions that meet his burden. What's your response to that? There is no evidence from depositions. The sites that he has in his reply are to that declaration that's not signed. To the extent that he tries to rely on policies, we acknowledge that there are policies, but the existence of policies isn't enough to establish that he knew of those policies, that he relied on those policies, that those policies were the reason. But reliance in this context has a special meaning, right? Yeah, he has to have been aware of the specific promise in the policy. So not even that he knows that there is an anti-harassment policy out there. He has to be aware of the specific promise in that policy that he's relying on, and he has to have relied on that promise to stay at work at the port and not go seek another job. And there's absolutely zero evidence of that in the record. So the court could affirm on that basis as well. With respect to the exhaustion piece, while the LMRA does not apply to political subdivisions like the port, the labor law principles set forth in all of this circuit's LMRA cases does apply. Washington applies those both in the municipal entity where there's a municipal employer as well as where it's a private employer. And the main case that Mr. Johnson relies on for that, Wilson v. City of Monroe, it demonstrates that. Even though it's a municipal entity, the City of Monroe, the court analyzes all of the exhaustion issues under the LMRA precedent, finding that a tort claim does not need to be grieved. The Swinford case that we cite out of the Washington Court of Appeals analyzes those exact same cases as well as this court's precedent in determining that a handbook claim, exactly like the type that Mr. Johnson brings, needs to go through the grievance process. Because if you have a CBA that is the exclusive contract between the employer and the employee group, a handbook's only effective to the extent that it's authorized through that CBA. And so you need to grieve, exhaust your remedies under the CBA. Now, that's not Woodbury? Woodbury, if you want to, under Washington law, the Local Whistleblower Protection Act provides you a cause of action to go through an administrative process in Olympia to adjudicate your Whistleblower Protection Act. So Mr. Johnson had two routes here. He could have proceeded on this retaliation theory through the grievance process at the port. He chose not to do that. He actually settled that claim. Or he could have proceeded through the administrative law proceeding under RCW 42.41 in Olympia, and he didn't do that either. But what is the proposition that there are things that you can do? And his argument would be it just says you can do it. But the argument of exhaustion is it's mandatory. So what stands for the proposition that if you don't exhaust, you're out? Sure. It is uniformly recognized that the fact that the CBA uses the word may does not give you the option to decide to exhaust or not. That's well settled under Washington law. The Maddox v. Old Republic case, the United States Supreme Court case, makes that very clear. And here the CBA doesn't have an alternate. It doesn't give you the election to either grieve or not grieve. If you believe that all grievances under related to your employment have to be grieved through the grievance process. Under the relevant policies here, were there any specific promises of certain action? No, there weren't, Your Honor. The two that Mr. Johnson points to are that H.R. 22, the anti-harassment policy, E.X. 13, the improper governmental action policy, have investigation provisions. But those don't apply to him. First, H.R. 22 specifically says employees covered by a CBA need to proceed through the CBA grievance procedures. E.X. 13, which is the improper governmental action policy, uses the word should, which is clear, and under Washington law it's clear that where it says should, that's discretionary. It doesn't make you a promise. That's the Stewart v. Chevron case. Thank you, Your Honors. In regards to Woodbury, again, I do have a case that has interpreted to some extent is Seattle v. Swanson, 193 Washington Ave., 795. But again, Did you put that in your blue brief? What's that? You put that cite in your blue brief? No, this is one that was in response to Woodbury. No, I did not. Okay. So, anyway, Can I recite the citation again, please? Yes. 193 Washington Ave., 795. That's a Division I case. And we just think that there's issues of fact around the defenses that have been raised that require these decisions to be decided by the jury. So, for instance, the statute of limitations question as to when that accrued is a jury question unless it's established. When do you think it accrued? Well, we filed, I think it's still ongoing because I think he's still being retaliated. And under Antonius, it's one indivisible act. He's basically been under constant harassment for eight or nine years now. He's still at the port. He is. He is. And so I think we're still within it. But they're relying on some date before January 8th. Well, the letter, the final letter came out January 8th. So it doesn't seem like there's much of an issue there to us. And in any event, Antonius has great application here. In regards to the lack of briefing on the issues raised lately, the Woodbury case, for instance, I had a 12-page limitation on my response to their motion for summary judgment. We already had an artificial limitation. And, again, the court relied exclusively, although it did address the other issues on the LMAR. To our opinion, he should have cross-appealed. And instead they raised it late. So we think that there's a bit of a difference. All right. You've got your last point coming up. You're over your one minute. Your Honor, I will leave it with that. Thank you. Thank you, Your Honor. Thank you, counsel. We appreciate your arguments and the matter submitted.
judges: Paez, Callahan, Selna